OPINION
Defendant-appellant, Dustin Hendrix, appeals his conviction in the Butler County Court of Common Pleas for murder.[1] We affirm the decision of the trial court.
On August 15, 1999, the decomposing body of a twenty-seven-year-old female, later identified as Patricia Barrett, was found in a shed adjacent to an unoccupied farmhouse in Oxford Township. Barrett was lying on the floor of the shed. She was wearing denim shorts and a blouse that had been pulled up to her breasts. A telephone cord was wrapped around her legs.
Pathologist Charles Norman Hurwitz, M.D., conducted an autopsy on Barrett's body upon the request of Butler County Coroner Richard Burkhardt, M.D. Dr. Hurwitz concluded that Barrett was dead for approximately thirty-six hours before her body was discovered. He observed that Barrett's body exhibited abrasions over her left eye and the center of her back. Her right eye was blackened. All of the external injuries to the body appeared to have been caused relatively recently. Notwithstanding the external bruising and cuts, Dr. Hurwitz determined that the cause of Barrett's death was drug and alcohol poisoning. Dr. Hurwitz noted several factors in support of his conclusion. Barrett's blood alcohol content was .236, and her body contained a "significant" amount of cocaine. Although it was impossible for Dr. Hurwitz to determine the amount of cocaine in Barrett's body, he found unmetabolized cocaine in her urine, which was an indication she had ingested more cocaine than her body could metabolize. Barrett also had severe pulmonary edema in the lungs, an indication of alcohol and barbiturate poisoning. Dr. Burkhardt accepted the conclusions of Dr. Hurwitz and completed a death certificate indicating that Barrett had died as a result of a drug and alcohol overdose.
As a result of law enforcement investigations, Barrett's body was exhumed three months later. At the request of Dr. Burkhardt, Robert Pfalzgraf, M.D., a forensic pathologist, conducted a second autopsy. Dr. Pfalzgraf viewed the video of the first autopsy and noticed that although Dr. Hurwitz examined the victim's larynx and trachea, he failed to uncover the thyroid cartilage that is covered by a layer of muscle. During the second autopsy Dr. Pfalzgraf observed that one of the cornu of the thyroid cartilage had been fractured and was tilted backward. There was a hemorrhage near the tip of the cornu, which indicated that the break had occurred prior to death, not during the first autopsy. While the break itself would not cause death, Dr. Pfalzgraf found that it indicated that manual strangulation was the cause of death. Dr. Pfalzgraf also observed four punctate wounds on the victim's neck, consistent with fingernail marks.
Dr. Pfalzgraf found no evidence of petechial hemorrhaging. Capillary vessel breakdown due to hypoxia, or a lack of oxygen causes petechial hemorrhages. Producing causes of hypoxia, leading to petechial hemorrhages, can include drowning, strangulation, and carbon monoxide poisoning. This particular type of hemorrhaging can occur throughout the body, including the face, eyes and lungs. According to Dr. Pfalzgraf, petechial hemorrhaging, if present, would support a conclusion that the victim had been strangled, but that such hemorrhaging is not diagnostic, nor is it present in all cases involving strangulation.
Upon review of the second autopsy, both Dr. Hurwitz and Dr. Burkhardt agreed with Dr. Pfalzgraf's conclusion that the cause of Barrett's death was manual strangulation. Dr. Burkhardt subsequently amended the death certificate to indicate that Barrett had died by strangulation, but also noted that cocaine and alcohol were significant contributing factors.
Investigators determined that Barrett was last seen alive on the evening of August 12, 1999 in the company of several friends. Barrett and her friends went to Charlotte's Bar in Hamilton, Ohio. At the bar, they met appellant. Later, they invited appellant to drink with them at a trailer owned by one of Barrett's friends.
Since appellant was one of the group last with Barrett before her disappearance, the police interviewed him. Ultimately, appellant revealed to the police that he was cruising around town after the party at the trailer when he saw Barrett walking down the street. Appellant pulled up next to Barrett and asked if she remembered him and would she like to get into his car. Barrett acquiesced and entered appellant's vehicle. Appellant stated that his intention was to engage in consensual sexual intercourse with Barrett. Appellant recounted that after riding around in the vehicle for about ten minutes, Barrett began gagging and vomiting, and then she urinated on herself. Appellant got out of the car to check on her. Believing that Barrett was dead, he drove to a farmhouse where he had seen a "For Sale" sign and deposited her in a white shed. When asked about Barrett's injuries, appellant stated that Barrett "started going crazy" and acting "kind of hostile." As a result, appellant stated that he used a phone cord he had in the back seat of his car to restrain Barrett by wrapping the cord around her. In addition, appellant admitted that he hit Barrett in the face during the fray and possibly blackened her eye.
Appellant was charged with murder, felonious assault, gross abuse of a corpse and abduction. After a trial to a jury, appellant was convicted as charged. Appellant appeals his conviction and raises one assignment of error for review.
Assignment of Error:
 THE DEFENDANT-APPELLANT RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL.
 In his assignment of error, appellant maintains he was denied the effective assistance of trial counsel. His claim of ineffective assistance of counsel is based on his trial counsel's failure to request public funds to hire an expert to review the autopsies and assist in the cross-examination of the two pathologists and the coroner. Appellant posits that the failure to retain an expert necessarily demonstrates his counsel's deficient performance and concludes, albeit without legal authority, that there can be no valid strategy in failing to seek expert assistance in a case such as this.
To establish a claim of ineffective assistance of counsel, appellant must first show that his counsel's actions were outside the wide range of professionally competent assistance. Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064. Second, appellant must demonstrate that he was prejudiced at trial as a result of counsel's actions. Id. at 689, 104 S.Ct. at 2065. To demonstrate prejudice, appellant must prove that, but for counsel's actions, there is a reasonable probability that the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068. When an appellant fails to satisfy one prong of the test, a reviewing court need not consider the other. Id. at 697, 104 S.Ct. at 2069. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of reasonable professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258. "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." State v. Carter (1995),72 Ohio St.3d 545, 558.
Contrary to appellant's assertion, a decision not to retain an expert witness does not necessarily constitute ineffective assistance of counsel. See State v. Thompson (1987), 33 Ohio St.3d 1, 11. In an aggravated murder case where identity of the perpetrator was the primary issue, counsel was not ineffective by failing to retain an expert to testify on the alleged weaknesses inherent in eyewitness testimony, choosing to rely upon cross-examination to impeach the eyewitnesses.State v. Madrigal (2000), 87 Ohio St.3d 378, 390; see, also, State v.Martin (July 31, 2001), Franklin App. No. 99AP-150, unreported. Counsel were not ineffective in a rape case when they chose not to request the appointment of a forensic pathologist and relied instead upon cross-examination of the state's expert to rebut evidence of the crime.Thompson at 10-11. In a case involving a charge of involuntary manslaughter, counsel was not ineffective by relying on cross-examination of the coroner instead of using an expert to rebut the coroner's opinion that the victim died as a proximate result of the stress of defendant's conduct rather than some other cause. State v. Emch (Sept. 22, 2000), Lucas App. No. L-99-1292, unreported.
Thus, it is generally a legitimate trial strategy for defense counsel not to request appointment of a forensic expert and, instead, rely upon cross-examination of a state's expert to rebut evidence of a crime. In most criminal cases such a decision by trial counsel is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant. See State v. Walker (Mar. 8, 2001), Seneca App. No. 13-2000-26, unreported. Further, even if the wisdom of such an approach is debatable, "debatable trial tactics do not constitute ineffective assistance of counsel." State v. Clayton (1980),62 Ohio St.2d 45, 49.
Similarly, in this case, appellant's trial counsel did not seek the appointment of an expert and relied upon cross-examination of doctors Burkhardt, Hurwitz and Pfalzgraf to rebut the state's charge that appellant was guilty of murdering Barrett. A review of the record demonstrates that appellant's trial counsel conducted a thorough and rigorous cross-examination of the state's experts. His trial counsel explored many pertinent issues, including the relative significance of a fractured cornu, the extreme levels of alcohol and cocaine in Barrett's body, the absence of petechial hemorrhaging and the initial discrepancies between the autopsies. Appellant's assertions that an appointment of an expert would have altered the outcome of his trial are pure speculation.
Appellant has failed to demonstrate that the actions of his trial counsel were outside the wide range of professionally competent assistance. Appellant was not denied the effective assistance of counsel. Accordingly, his assignment of error is overruled.
VALEN, P.J., and WALSH, J., concur.
[1] Appellant was also convicted of felonious assault, gross abuse of a corpse and abduction. Appellant has not assigned error to those convictions.